**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 20-cv-03202-RM-STV

JAMES ARTHUR FAIRCLOTH,

    Plaintiff,

v.

CDOC,
CDOC EXECUTIVE DIRECTOR DEAN WILLIAMS,
BVCC WARDEN JASON LENGERICH,
BVCC M.S.A. JERE HAMMER, and
CHIEF MEDICAL OFFICER – CDOC DR. MAUL,

    Defendants.

---

## ORDER

---

Plaintiff, who appears *pro se*, is a Colorado state inmate being housed at the Buena Vista Correctional Complex – Minimum ("BVCC"). Plaintiff filed this prisoner complaint pursuant to 42 U.S.C. § 1983 challenging the conditions of his confinement based on COVID-19. This matter is now before the Court on Plaintiff's (1) Motion for Emergency T.R.O./Injunctive Relief (the "PI Motion") (ECF No. 23) and (2) Motion and Affidavit of Truth for a Hearing Forthwith (the "Motion for Hearing") (ECF No. 22). After considering the motions and applicable law, and taking judicial notice[1] of certain matters as indicated in this Order, and being otherwise fully advised, the Court finds and orders as follows.

---

[1] *See Valentine v. Collier*, 960 F.3d 707, 708 (5th Cir. 2020) (Davis, J., concurring) (recognizing court may take judicial notice of statistics concerning COVID-19); *United States v. Maxton*, No. 13-CR-00411-PAB, 2020 WL 6565231, at *4 (D. Colo. Nov. 9, 2020) (taking judicial notice of Bureau of Prisons' website); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1171–72 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); *Eden v. Voss*, 105 F. App'x 234, 240 n.6 (10th Cir. 2004) (recognizing district court may take judicial notice of pleadings in another case).

## I. BACKGROUND

As stated, Plaintiff is an inmate at BVCC who filed this action seeking relief based on the COVID-19 pandemic. In his complaint, Plaintiff alleges that he is a vulnerable, non-violent, parole eligible prisoner and that Defendants have failed to take adequate and reasonable measures to address COVID-19. Specifically, Plaintiff alleges that he has, among other ailments, moderate to severe asthma and liver diseases. Nonetheless, Defendants allegedly fail (1) to put into place basic preventative measures to prevent Plaintiff from contracting COVID-19 or (2) to have in place, and ready to administer on day 2-3 of a COVID-19 infection, treatments such as remdesivir for high vulnerability prisoners like Plaintiff. As relevant here, Plaintiff further alleges that the Eighth Amendment requires Defendants to either mitigate the threat to Plaintiff by having available such treatment upon day 1-3 of being infected or to release him on parole so he can safely distance and obtain access to such treatment. Plaintiff does not allege that he has or had COVID-19.

Based on Defendants' alleged failures, Plaintiff brings the following claims before this Court:

(1) Eighth Amendment claim based on his conditions of confinement, seeking a declaration that Defendants' policies, customs, and practices (collectively, "policies") constitute an Eighth Amendment violation, and an injunction requiring Defendants to adopt policies that provide "15 minute testing of guards" prior to coming to work at BVCC and to get Plaintiff Regeneron or, alternatively, to release Plaintiff.

(2) Eighth Amendment claim based on the conditions of his confinement, seeking compensatory and punitive damages;

(3) American with Disabilities Act claim against the CDOC seeking compensatory damages; and

(4) State law tort claims seeking compensatory and punitive damages.

Plaintiff's complaint is signed pursuant to 28 U.S.C. § 1746 and 18 U.S.C. § 1621.[2]

Notwithstanding the filing of this action, Plaintiff's PI Motion advises that there are two other pending lawsuits[3] which relate to Plaintiff's request to be released. Plaintiff advises one is pending in El Paso County District Court, Case No. 20-cv-113, and one is a putative class action apparently pending in Denver District Court,[4] *Winston v. Polis*, Civil Action No. 20cv31283. With this background, the Court examines Plaintiff's PI Motion apparently based on his Eighth Amendment claim for declaratory and injunctive relief.

## II.   STANDARD

The standard to merit a temporary restraining order ("TRO") is the same as that for a preliminary injunction. *See Wiechmann v. Ritter*, 44 F. App'x 346, 347 (10th Cir. 2002) (applying same standard for both). To obtain preliminary injunctive relief, Plaintiff must establish "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quotation omitted). Because a preliminary injunction is an extraordinary remedy, the party's right to relief must be clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

---

[2] Plaintiff's Motion for Hearing, which accompanies his PI Motion, is signed pursuant to 28 U.S.C. § 1746 and 18 U.S.C. § 1621.
[3] This raises the question of whether *Younger v. Harris*, 401 U.S. 37 (1971) may apply. A federal court may address the application of the *Younger* doctrine *sua sponte*. *Sanchez v. Wells Fargo Bank, N.A.*, 307 F. App'x 155, 157 (10th Cir. 2009) (citing *Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976) and *Morrow v. Winslow*, 94 F.3d 1386, 1390–91 (10th Cir.1996)). The current record is insufficient to determine whether *Younger* may apply. For now, the Court leaves that issue for another day.
[4] Plaintiff did not state where *Winston v. Polis* was filed but the Court takes judicial notice that it was filed in Denver District Court.

Further, because the fundamental purpose of preliminary injunctive relief is to preserve the relative positions of the parties until a trial on the merits can be held, the Tenth Circuit has identified three types of disfavored injunctions: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits." *Id.* at 1258-59 (quotation omitted). To obtain a disfavored injunction, the moving party faces even a heavier burden – he must make a "strong showing" that the first and third factors tilt in his favor. *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019).

Plaintiff appears *pro se*; therefore, the Court liberally construes his pleadings. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). Nevertheless, Plaintiff must still comply with the same rules of procedure as other litigants. *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994).

### III.   DISCUSSION

Plaintiff asserts he meets all the requirement for a TRO. The Court finds otherwise.

**A.  No Substantial Likelihood of Success on the Merits**

Because Plaintiff seeks a disfavored injunction, he must make a "strong showing" that there is a substantial likelihood of success on the merits of his Eighth Amendment claim for declaratory and injunctive relief.[5] The Court finds Plaintiff has failed to do so for more than one reason.

To start, Plaintiff requests the remedy of release of custody, in addition to other relief.[6] But, "release from custody is not an available remedy in a § 1983 action." *Brown v. Sedgwick*

---

[5] Plaintiff sues CDOC and the individual Defendants in their personal and official capacities. In light of the Court's determination that Plaintiff fails to establish the requirements for a TRO, the Court needs not evaluate whether the claim is otherwise viable against each Defendant, e.g., any requirement for personal participation.

[6] Plaintiff's PI Motion vacillates between mitigation measures *or* release, and mitigation measures *and* release. Regardless, the PI Motion closes with the request for mitigation measures and release in the interim, until measures Plaintiff seeks are provided.

*Cty. Sheriff's Office*, 513 F. App'x 706, 707 (10th Cir. 2013). *See also Graham v. Waters*, 805 F. App'x 572 (10th Cir. 2020) (An inmate's "request for an injunction ordering his immediate release from custody is not a cognizable request for relief in this § 1983 claim."). The Court declines to follow decisions from other Circuits, to the extent they hold otherwise. For this reason alone, Plaintiff's PI Motion can be denied.

Further, Plaintiff fails to establish a likelihood of success on the merits of his claim, even as to the other relief requested. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. It "protect[s] against unjustifiable conditions of confinement, such as the unnecessary and wanton infliction of pain…or deliberate indifference to an excessive risk to a prisoner's health." *Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019) (internal quotation marks omitted). But prison officials violate the Eighth Amendment "only if the deprivation to which the prisoner has been subjected is 'objectively sufficiently serious' and only if the prison official has a 'sufficiently culpable state of mind.'" *Grissom v. Roberts*, 902 F.3d 1162, 1174 (10th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "'In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). But, "prison officials who actually knew of a substantial risk to inmate health or safety may [nonetheless] be found free from liability if they responded *reasonably* to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844 (italics added). In other words, that the prison officials did not disregard the substantial risk of harm "by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Here, Plaintiff does not contend that no measures have been taken to prevent or address COVID-19. For example, Plaintiff states that preventative measures have been taken, such as

wearing masks; the facility is in lockdown; each inmate is tested once per week; no new inmates are placed into the facility; he is isolated in his cell A-3-1 with another inmate; and only guards and medical personnel are being allowed into the facility. In addition, the guards are being tested for COVID-19 with the PCR[7] test. Plaintiff argues, however, that the measures in place are inadequate or unreasonable; that the PCR test is "antiquated." Plaintiff contends that Defendants' mitigation efforts are reasonable only if they test all guards using the 30-minute Lucira COVID-19 test prior to their entry into the BVCC and they provide Plaintiff with preventative treatment such as bamlanivimab.[8] On this record, the Court is not persuaded.

First, Plaintiff's argument is premised on the proposition that he is a high-risk individual. Plaintiff's alleges, among other ailments, moderate to severe asthma and liver disease[9] which he contends increase his risk of contracting COVID-19 and suffering from a severe illness (even death) should he contract COVID-19. The Court readily dispenses with the first assertion – that of an increased risk of contracting COVID-19 – as Plaintiff fails to provide any support. Indeed, the Center for Disease Control and Prevention ("CDC") states that certain underlying medical conditions increase a person's risk for *developing* severe illness from COVID-19, not for *contracting* the virus in the first instance. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Dec. 1, 2020). Moreover, the CDC differentiates between adults with certain medical conditions who "**are** at increased risk" and adults with other medical conditions who "**might be** at an increased risk." *Id.* (bold in original, italics added). Plaintiff's alleged

---

[7] "RT-PCR" is the "reverse transcription polymerase chain reaction" used to detect COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/lab/resources/antigen-tests-guidelines.html (last visited Dec. 1, 2020).
[8] To the extent Plaintiff relies on the allegation that he has not been vaccinated for COVID-19 to support his Eighth Amendment claim, that also fails. There is currently no approved vaccine to be had for the public. It goes without saying that prison officials cannot be acting unreasonably when what Plaintiff requests is unavailable.
[9] Plaintiff appears to rely predominately on these two ailments to support his alleged increase risks.

medical conditions places him in the "might be" category. Thus, Plaintiff has not shown he is a high-risk individual.

Secondly, Plaintiff fails to persuade the Court – with nothing other than bare allegations – that weekly testing using PCR – rather than Lucira – is constitutionally unreasonable. Lucira was only recently (November 17, 2020) authorized by the Food and Drug Administration under an Emergency Use Authorization ("EUA").[10] Plaintiff fails to show, for example, that Lucira is widely available, is more effective than PCR, or should be used on asymptomatic individuals. After all, the CDC considers PCR tests the "gold standard" of COVID-19 testing.[11]

The same holds true for Plaintiff's allegations concerning Defendants' alleged failure to provide Plaintiff with bamlanivimab. The FDA also recently issued an EUA for the investigational monoclonal antibody therapy bamlanivimab for the treatment of mild-to-moderate COVID-19.[12] Bamlanivimab, and other treatments such as remdesivir, however, are authorized for patients with positive results. Plaintiff does not allege that he has COVID-19. Nor does Plaintiff show that such treatment is required to be issued for preventative purposes, as he seeks here. Accordingly, Plaintiff fails to make a strong showing of likelihood of success on the merits of his claim.

### B. No Irreparable Harm

Plaintiff argues he will suffer irreparable harm, relying on Defendants' alleged use of PCR rather than Lucira to test for COVID-19 and on his "particular vulnerability to contracting and dying from COVID-19." But, as discussed above, Plaintiff fails to sufficiently show that his alleged medical conditions place him at a higher risk for contracting COVID-19 much less dying

---

[10] https://www.fda.gov/media/143810/download (last visited Dec. 1, 2020).
[11] https://www.cdc.gov/coronavirus/2019-ncov/lab/resources/antigen-tests-guidelines.html (issued September 4, 2020) (last visited Dec. 1, 2020).
[12] Statement on Bamlanivimab EUA | COVID-19 Treatment Guidelines (nih.gov) (last visited Dec. 1, 2020).

from the virus. Similarly, Plaintiff fails to show that Defendants' alleged use of PCR will cause him to suffer such speculative harm. The Court is aware that the Eighth Amendment protects inmates from future harm. *Savage v. Fallin*, 663 F. App'x 588, 592 (10th Cir. 2016) (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993)). And, that "courts may not 'deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them.'" *Id.* (quoting *Helling*, 509 U.S. at 33). But, here, the Court finds Plaintiff fails to show such an unsafe condition exists from his allegations of the failure to use one COVID-19 test over another, or of the failure to provide him with a COVID-19 treatment for a virus he does not have. Accordingly, on this record, the Court finds Plaintiff fails to show irreparable harm.

## IV. CONCLUSION

The Court denies Plaintiff's request for a TRO. It does not, however, address Plaintiff's request for a preliminary injunction. The Court will consider this request on a full record, after briefing has been completed on this part of Plaintiff's PI Motion. Further, although the Court denies the TRO, it is cognizant of the magnitude of the COVID-19 pandemic and the serious health risks it presents. The Court also does not doubt the sincerity of Plaintiff's concerns about contracting COVID-19 and the possible resulting health risks. But, on this record, the Court finds Plaintiff fails to show the extraordinary relief which he seeks can and should be granted. It is therefore **ORDERED**

(1) That Plaintiff's Motion for Emergency T.R.O./Injunctive Relief (ECF No. 23) is DENIED as to his request for a TRO and DEFERRED as to his request for preliminary injunctive relief; and

(2) That Plaintiff's Motion and Affidavit of Truth for a Hearing Forthwith (ECF No. 22)

is DENIED as to his request for a hearing regarding his Motion for TRO but DEFERRED as to his request for a hearing regarding his Motion for Injunctive Relief;

(3) That Defendants shall respond to the Motion for Injunctive Relief within 21 days of the date of this Order; and

(4) That the Clerk shall forward a copy of this Order to Defendants and shall record this action in the docket.

DATED this 2nd day of December, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge